IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK SAIKI,

    Petitioner,

v.                                                                                     Civ. No. 21-070 KG-JFR

PEOPLE OF NEW MEXICO,

    Respondent.

MEMORANDUM OPINION AND ORDER

    This matter comes before the Court on Petitioner Mark Saiki's Petition for Writ of Habeas Corpus. (Doc. 1) (Petition). Also before the Court is his Motion for Temporary Restraining Order (TRO Motion). (Doc. 2). The Court previously directed Petitioner to show cause why the Petition and TRO Motion are not moot, given his recent release from custody. Having considered the show-cause responses and applicable law, the Court will dismiss this case as moot.

I.   Background

    Petitioner initiated this case on January 27, 2021. (Doc. 1) at 1. At the time, he was a pretrial detainee at the Dona Ana County Detention Center (the "Jail"). *Id.* The Petition does not specify why Petitioner was in Jail or contain details about any state bond hearing. It merely references a federal tax fraud investigation and an allegation of criminal trespass. *Id.* at 2-3. The show-cause response provides additional background. (Doc. 6) at 5-12. Petitioner alleges that at the start of 2021, he was staying at Camp Hope in Las Cruces. *Id.* at 7. Camp Hope provides temporary shelters, showers, and cooking facilities for homeless individuals. *Id.* It operates alongside Community of Hope, which provides access to other essential programs

relating to food and employment.  *Id.*  Nicole runs both organizations, and another staff member, Lacey, helps enforce camp rules.  *Id.*

On January 6, 2021, Lacey expelled Petitioner from Camp Hope for using profanity and allegedly assaulting a staff member.  (Doc. 6) at 5, 9.  Petitioner refused to leave, and police arrived on the scene.  *Id.* at 8-9.  Petitioner allegedly told the first responding officer: "We can do this the easy way, or the hard way.  Let me present my defenses … for ten uninterrupted minutes, followed by twenty minutes of discussion… and I will leave quietly."  *Id.* at 10-11.  When the officer interrupted after 30 seconds, Petitioner called 911 to have him arrested.  *Id.* at 11.  Eventually more officers arrived, and Petitioner began screaming racial slurs at Nicole, a Hispanic woman.  *Id.* at 6, 11.  Petitioner did not want to deal with state authorities and claims the racial slurs would bring the matter within federal jurisdiction.  *Id.* at 6.  Petitioner was incorrect, and the local officers arrested him as he screamed and tried to prevent his removal from Camp Hope.  *Id.* at 11.

Petitioner was charged with an unspecified crime and remanded into custody.  (Doc. 6) at 12.  He filed the federal Section 2241 Petition and TRO Motion after arriving at the Jail.  (Doc. 1) at 1.  The Petition seeks a release from pretrial custody.  Petitioner - an attorney who used to practice in Colorado - argued he is not a flight risk.  *Id.* at 5.  He wished to obtain evidence from his impounded car and file motions on behalf of clients in the Colorado Bankruptcy Court.[1]  *Id.* at 3-6.  The Petition also appears to contain allegations challenging Petitioner's conditions of confinement.  *Id.* at 8.  However, there was no specific request for

---

[1] Although Petitioner purports to represent two clients, the Colorado Supreme Court website reflects that his law license has been suspended.  *See* https://www.coloradosupremecourt.com/Search.

relief beyond a release from custody.  *Id.* at 8.  Petitioner filed the TRO Motion along with the Petition on January 27, 2021.  (Doc. 2).  He again asked the Court to order his immediate release from Jail on a ROR (released on one's own recognizance) bond.  *Id.* at 2.

Three weeks after the arrest, Camp Hope dropped all charges and Petitioner was released. (Doc. 6) at 12.  The Court entered an Order on February 5, 2021 directing him to show cause why his habeas Petition and TRO Motion are not moot.  (Doc. 3).  The first show-cause response contains numerous complaints against the Court, the Clerk's Office, Camp Hope, the arresting officers.  (Doc. 6) (First Response).  Petitioner alleges:

(1)   All state and local agencies associated with Camp Hope and Petitioner's arrest committed constitutional violations.  The officers allegedly failed to Mirandize Petitioner and required him to pay $500 to obtain his car from an impound lot.  The constitutional violations allegedly have "continuing collateral consequences on Petitioner" and impair his ability to defend himself.  (Doc. 6) at 1, 3, 5.

(2)   The Court and its staff refuse to "handle[] [Petitioner] with kid gloves."  (Doc. 6) at 2.  For example, the Clerk's Office mailed the Order to Show Cause to the Jail, where Petitioner was located when he filed the Petition.  Petitioner also complains he has not verbally spoken to a judge.  He believes this constitutes an "ex parte" proceeding and that the Court should recuse. *Id.* at 2-3.

(3)   Jail officials violated the constitution during Petitioner's three week stay.  They allegedly limited his phone use; placed him in segregation for assaulting another detainee; denied medical case; classified his glasses as a weapon; and used excessive force.  *Id.* at 4-5.

The First Response seeks at least $100 per day in money damages based on the alleged

constitutional violations. (Doc. 6) at 13. Petitioner also asks the Court to transfer this case to a panel that includes a Colorado U.S. District Judge and New Mexico Bankruptcy Judge Mark McFeely, who retired in 2009. *Id.* On March 18, 2021, Petitioner filed a second show-cause response. (Doc. 7) (Second Response). The Second Response strikes a more abusive tone but raises many of the same arguments as the First Response. Petitioner alleges:

(1) This habeas action challenging pretrial detention is not moot because Petitioner wants to pursue claims under 42 U.S.C. § 1983, and he referenced his prison conditions in the habeas Petition. (Doc. 7) at 8-9

(2) This habeas action is not moot because Petitioner also wishes to challenge an underlying conviction. The Second Response does not include any details about underlying convictions.

(3) The Court improperly used the Jail inmate locator website to determine whether Petitioner – who visited the Court Intake Counter twice this week – is in fact out of Jail. Petitioner alleges the Court is now part of the conspiracy against him but should direct its "wrath" toward Clerk's Office staff. (Doc. 7) at 1-3, 11.

(4) The Court should require all parties involved in his expulsion from Camp Home, his arrest, his detention, and his mental health treatment to show cause why they should not pay damages their constitutional violations and/or dismiss all pending charges. (Doc. 7) at 13-22.

The Court will consider Petitioner's request for recusal before turning to mootness.

II. Discussion

　A. Recusal/Disqualification

Section 455 of Title 28 requires a judge to recuse when his impartiality might be

questioned or when he has a personal bias against a party. *See* 28 U.S.C. §§ 455(a), (b)(1). The question is whether "sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000). A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation. *See Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). Recusal is also not required where the movant gives no indication of the "facts . . . [or] reasons for the belief that bias or prejudice exists," as required by 28 U.S.C. § 144. *See also Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992) (noting that a "judge must not proceed further when a party makes and files a *timely* and *sufficient* affidavit that the first judge has a personal bias or prejudice.").

Petitioner has not met this standard. The First Response alleges the Court is proceeding "ex parte" because it declined to hold a hearing or grant a personal audience. "Conduct is 'ex parte' when it is done … at the instance and for the benefit of one party only, and without notice to … anyone having an adverse interest." *In re Mushroom Direct Purchaser Antitrust Litig.*, 2019 WL 2107795, at *2 (E.D. Pa. May 14, 2019) (quoting Black's Law Dictionary (10th ed. 2014)). The Court has not taken any action on behalf of Respondents, or without notice to Petitioner. Respondents have not been served in this case, as it is subject to *sua sponte* screening under Habeas Corpus Rule 4.[2] Further, CM/ECF reflects that the Clerk's Office served notice of the Order to Show Cause on Petitioner at the Jail. (Doc. 3). That mailing was

---

[2] "Habeas Corpus Rule" refers to the Rules Governing Section 2254 Proceedings in the United States District Courts. The Court, in its discretion, applies those rules to the § 2241 petition. *See Boutwell v. Keating*, 399 F.3d 1203, 1211 n. 2 (10th Cir. 2005) (court acted within its discretion by applying § 2254 Rules to § 2241 petition); *McFarland v. Scott*, 512 U.S. 849, 114 (1994) (courts may summarily dismiss any habeas petition that appears legally insufficient on its face).

appropriate, as Petitioner submitted an envelope listing the Jail as his return address only nine days earlier.    Petitioner also obtained a copy of the Order to Show Cause and timely responded, notwithstanding his release from Jail.   (Doc. 6).   Accordingly, there was no *ex parte* conduct.

The Second Response - which was accepted despite it being untimely - mostly contains more name calling and insults toward the Court and its staff.   Petitioner disagrees with the Order to Show Cause on mootness, but he also raises three discrete instances of alleged wrongdoing. Petitioner alleges the Court sat on the TRO Motion for 45 days, which is untrue.   (Doc. 7) at 22. He filed the TRO Motion on January 27, 2021 requesting an immediate release from Jail.   (Doc. 2).   Nine days later, the Court issued the Order directing him to explain why the TRO Motion is not moot.   (Doc. 3).   Petitioner also complains that the Court does not have a duty judge who is available "24/7" in civil cases.   (Doc. 7) at 12.   This is true of most federal courts around the country, and it does not establish wrongdoing.

Petitioner finally complains the Court improperly took judicial notice of the Jail's inmate locator website to determine he is no longer in Jail.   The Tenth Circuit has repeatedly permitted courts to take "judicial notice of th[e] information regarding [a petitioner's] release that is available to the public on the ... inmate locator" websites.   *United States v. Robles-Ortega*, 2009 WL 1969936, *1 n. 1 (10th Cir. July 9, 2009). *See also United States v. Muskett*, 970 F.3d 1233, 1237 (10th Cir. 2020) (taking judicial notice of federal inmate locator); *Triplet v. Franklin*, 365 Fed. App'x 86, 92 n.8 (10th Cir. Feb. 5, 2010) (taking judicial notice of Oklahoma Department of Corrections' inmate locator website); *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n. 22 (10th Cir. 2009) (taking judicial notice of information on "[t]he websites of two federal agencies").

For these reasons, the Court finds that Petitioner has not established impartiality or bias. His request for recusal is denied.

B. <u>Mootness of Habeas Claims</u>

As part of the mootness inquiry, the Court must define the scope of this proceeding. Petitioner filed the habeas Petition and TRO Motion from Jail. He requested an immediate release and provided numerous reasons why it was necessary.[3] The Court construed the Petition under 28 U.S.C. § 2241, which "is the proper avenue … to challenge pretrial detention." *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). After his release, Petitioner tried to convert this case into a 42 U.S.C. § 1983 civil rights action. Both Responses request money damages for past constitutional violations, including Eighth Amendment violations, Due Process violations, excessive force, and false imprisonment. (Doc. 6) at 13; (Doc. 7) at 8-9.

Habeas proceedings are distinct from civil rights litigation; the actions have different filing fees, legal standards, and rules of procedure. *See McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (habeas proceedings secure release from illegal custody, whereas constitutional claims for money damages should be brought as civil rights actions). Hence, the Court declines to adjudicate civil rights claims in this habeas proceeding. The focus will be limited to whether the Section 2241 Petition and TRO Motion are moot, following Petitioner's release from custody. *See, e.g., Sherratt v. Friel,* 2008 WL 313177, *1 (10th Cir. Feb. 4, 2008) (affirming dismissal of Section 2254 habeas petition that referenced prison conditions, since those claims should be brought under Section 1983); *Bentley v. Kansas*

---

[3] The original Petition contained some allegations regarding the conditions at the Jail, but it did not include a request for damages. (Doc. 1) at 7. However, the Petition was styled as a habeas pleading and was clearly directed at the fact of confinement.

7

*Secretary of Corrections*, 1999 WL 617719, *1 (10th Cir. Aug. 16, 1999) (same); *Davis v. Roark*, 15 Fed. App'x 653, 655 (10th Cir. 2001) (affirming refusal to address habeas claims in a civil rights action).

Section 2241 provides a remedy when a petitioner is "in custody in violation of the Constitution or laws … of the United States."  28 U.S.C. § 2241(c)(3).  A released petitioner can only prevail where a wrongful conviction or detention has "continuing collateral consequences" sufficient to meet the in-custody requirement.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  *See Dumas v. U.S. Parole Comm'n,* 397 Fed. App'x 492, 493 (10th Cir. 2010) (applying *Spencer's* mootness inquiry to § 2241 petitions); *United States v. Fields*, 823 Fed. App'x 587, 589 (10th Cir. 2020) (A Section 2241 "case becomes moot when a plaintiff no longer suffers a *redressable* injury") (emphasis added).  Unless the habeas claims challenge an underlying criminal conviction, the Court presumes no collateral consequences exist following a release from jail.  *See United States v. Meyers*, 200 F.3d 715, 719 (10th Cir. 2000).  The "[petitioner] bears the burden of demonstrating the existence of actual collateral consequences" stemming from the detention.  *United States v. Meyers*, 200 F.3d 715, 719 (10th Cir. 2000).

The First Response purports to identify numerous collateral consequences stemming from Petitioner's pretrial detention.  His car was impounded; he lacked access to evidence; he could not reach his attorney; and Jail officials allegedly violated his constitutional rights.  (Doc. 6) at 1-5.  The Second Response expands on that list and argues this action is not moot numerous parties violated Petitioner's constitutional rights.  (Doc. 7) at 8-26.  Accepting these facts as true, the Court still cannot fashion a habeas remedy.  The Court cannot "modify [Petitioner's pretrial detention] now that it has been completed.  [T]he best this [C]ourt could do for him

8

would be to declare that he spent longer in [Jail] than he should have," which is an improper use of the writ. *Rhodes v. Judiscak*, 676 F.3d 931, 935 (10th Cir. 2012) (addressing mootness under Section 2241). *See also Crawford v. Booker,* 2000 WL 1179782, at *2 (10th Cir. 2000) (Section 2241 petition was moot following release from prison since there was no underlying conviction to vacate). The Second Response also argues the action is not moot because he is in fact challenging underlying convictions. (Doc. 7) at 4. Even if the Court were to accept 28 U.S.C. § 2254 claims in this Section 2241 action, Petitioner has not provided sufficient information to resist dismissal. He does not list specific case numbers, conviction dates, or charges; at one point he admits there "has not yet been a conviction." (Doc. 7) at 4. Hence, Petitioner has not demonstrated a *redressable* injury under Section 2241 following his release from custody.

Based on the forgoing, the Court concludes the Petition and TRO Motion are both moot. The Court will dismiss this habeas proceeding without addressing the alleged constitutional violations under 42 U.S.C. § 1983. If Petitioner seeks a remedy for past constitutional violations under Section 1983, he may raise those claims in a separate a civil rights complaint.

    C.   <u>Conduct Towards Court Staff</u>

As a final matter, the Court will address Petitioner's recent interaction with staff. A Clerk's Office Supervisor (Supervisor) reported that Petitioner arrived at the Court's Intake Counter in Las Cruces, New Mexico on March 15, 2021, at about 4:10 p.m. The Supervisor further reported that Petitioner was very loud and agitated. Petitioner complained that mail (presumably the Order to Show Cause) was sent to the wrong address but refused to confirm his current address. He also made loud, relentless demands to see a judge and have his TRO Motion heard right at that moment. This went on for at least 20 minutes and required the

9

supervision of two Court Security Officers and two U.S. Marshals.  The Second Response elaborates on the interaction and contains multiple insults toward the Supervisor.  (Doc. 7) at 6-7.  Petitioner alleges he has a right to access judges "24/7" for a hearing and is entitled to have the phone number of the "Duty Judge."  *Id.* at 18.  He also admitted that he was "willing to throw a chair through the Clerk's window" if it would result in a hearing.  *Id.* at 13.

Petitioner is warned that he must interact with staff in a calm, respectful matter during all visits.  Court staff continue to provide vital in-person government services during the COVID-19 pandemic, and verbal abuse/violence will not be tolerated.  If Petitioner approaches staff with loud, relentless demands or otherwise erupts in anger again, the Court will consider whether to limit his filing options to mail or a drop-box.  Petitioner is also warned that violence and threats may be referred to the U.S. Marshal.

IT IS ORDERED:

1. Petitioner Mark Saiki's Petition for Writ of Habeas Corpus (Doc. 1) is dismissed as moot, and without prejudice to raising separate civil rights claims under 42 U.S.C. § 1983.

2. Petitioner's Motion for Temporary Restraining Order (Doc. 2) is denied as moot.

3. The Court will enter a judgment closing this habeas case.

_____
UNITED STATES DISTRICT JUDGE